# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DONALD J. VANARTSDALEN, on behalf
of himself and all others similarly situated,

*Plaintiff*,

vs.

Case No. 09-2030-EFM

DEFFENBAUGH INDUSTRIES, INC.,

*Defendant*.

## MEMORANDUM AND ORDER

Plaintiff Donald J. VanArtsdalen filed the present action on behalf of himself and others similarly situated alleging that Defendant Deffenbaugh Industries, Inc. ("Deffenbaugh") failed to pay him overtime compensation under the Fair Labor Standards Act ("FLSA") and the Kansas Minimum Wage and Maximum Hours Law ("KMWMHL").[1] Presently before the Court is Defendant Deffenbaugh's motion for summary judgment (Doc. 54) and Plaintiff VanArtsdalen's motion for conditional class certification (Doc. 48). For the reasons stated below, the Court grants Defendant's motion for summary judgment, and denies Plaintiff's motion as moot.[2]

---

[1] In the second sentence of his response to Defendant's motion for summary judgment, Plaintiff states that he has brought this action also to recover unpaid straight time. Plaintiff's complaint, however, does not mention unpaid straight time; rather, it merely states that Plaintiff is seeking unpaid overtime. As a result, Plaintiff, who is represented by counsel, has failed to properly assert a claim for straight time pay, and the Court need not assess the viability of such a claim. *See Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303, 309 (11th Cir. 2009).

[2] *See, e.g., Glanville v. Dupar, Inc.*, 2009 WL 3255292, at *1 (S.D. Tex. Sept. 25, 2009) (denying the plaintiff's motion for conditional class certification as moot because it granted summary judgment to the defendant on the plaintiff's FLSA claim).

## I. BACKGROUND/FACTS

Defendant Deffenbaugh engages in the collection of residential trash and recyclable materials in Kansas and Missouri by use of residential trash trucks. All of Deffenbaugh's residential trash trucks in the Kansas City area are dispatched from Shawnee, Kansas, at the beginning of each work day, have an empty gross vehicle weight in excess of 26,000 pounds, and display Deffenbaugh's Department of Transportation ("DOT") number, 271225. Deffenbaugh is subject to inspections and audits by the DOT's Federal Motor Carrier Safety Administration ("FMCSA"). Deffenbaugh's residential trash truck drivers comply with the DOT's pre- and post-trip inspection requirements and hours-of-service limitations.

In February 2002, Deffenbaugh hired Plaintiff VanArtsdalen as a helper on its residential trash trucks. During his employment, VanArtsdalen typically worked on a residential trash truck that traveled on public roads and highways from Shawnee, Kansas, to a residential trash route in Lee's Summit, Missouri. As a helper, VanArtsdalen was responsible for working with the truck's driver to place trash in the truck. Because certain forms of trash could potentially injure VanArtsdalen, the truck, the truck's driver, and the public (for example, loading pool chemicals into the truck's hopper could cause a fire), VanArtsdalen had to make decisions about whether the items left for pick up were acceptable for loading onto the truck. VanArtsdalen's loading decisions were based on the safety guidelines promulgated by Deffenbaugh.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3] "An issue of

---

[3] Fed. R. Civ. P. 56(c).

fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4]  A fact is "material" when "it is essential to the proper disposition of the claim."[5]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11]  Conclusory allegations alone cannot defeat a properly supported motion

---

[4]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5]*Id.*

[6]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[8]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[9]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11]*Adler*, 144 F.3d at 671.

for summary judgment.[12] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## Analysis

As noted above, Plaintiff is asserting both a FLSA overtime claim and a state law overtime claim. The Court will review these claims in turn.

**FLSA Overtime Claim**

Under the FLSA, an employer must pay an employee overtime compensation if he works more than forty hours per week.[15] The FLSA exempts from this requirement, though, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49,"[16] otherwise known as the Motor Carrier Act ("MCA") exemption. The employer has the burden of showing that the exemption applies, and the exemption is construed narrowly against it.[17] According to the Department of Labor ("DOL") regulations enforcing the FLSA, the applicability of the MCA

---

[12]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]*See* 29 U.S.C. § 207(a)(1).

[16]*See* 29 U.S.C. § 213(b)(1). The Secretary need only possess the power to regulate the employees at issue; it need not actually exercise that power in order for the exemption to apply. *See, e.g., Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678 (1947).

[17]*See, e.g., Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2011).

exemption "depends both on the class to which [the employee's employer] belongs and on the class of work involved in the employee's job."[18] Thus, to qualify for the exemption, the employer must show three things: (1) that it is a carrier whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction, i.e., its transportation of passengers or property takes place in interstate commerce; (2) the employee is a driver, driver's helper, loader, or mechanic; and (3) the employee engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce.[19] Plaintiff contends that Defendant cannot satisfy any of the aforementioned elements.

Plaintiff argues that the first element cannot be met because Defendant was not subject to the Secretary's jurisdiction. The Court disagrees. Defendant is subject to inspections and audits by the DOT's FMCSA,[20] its residential trash truck drivers comply with the DOT's pre- and post-trip inspection requirements and hours-of-service limitations, its residential trash trucks are registered with the DOT and have been assigned a DOT registration number, and its residential trash trucks cross state lines on a daily basis. The combination of these facts eliminates any question as to whether Defendant was subject to the Secretary's jurisdiction.[21] Plaintiff's reliance on *Baird v. Wagner Transportation Co.*,[22] a case where the Sixth Circuit found that the defendant's drivers were

---

[18] 29 C.F.R. § 782.2(a).

[19] *See* 29 C.F.R. §§ 782.2(a)-(b)(2).

[20] "With the Motor Carrier Safety Improvement Act of 1999, 113 Stat. 1748, Congress transferred responsibility for motor carrier safety within DOT to the newly created FMCSA." *Midwest Crane & Rigging, Inc. v. Fed. Motor Carrier Safety Admin.*, 603 F.3d 837, 840 (10th Cir. 2010).

[21] *See, e.g., Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227-28 (11th Cir. 2009) (finding that the facts stated above clearly show that the plaintiff was employed by a carrier that is subject to the Secretary's jurisdiction (citing *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991))).

[22] 425 F.2d 407 (6th Cir. 1970).

not exempt from the FLSA's overtime provisions despite the fact that the employer had interstate certificates, is misplaced. Unlike in *Baird*, it is uncontroverted here that the defendant's trucks cross state lines. Therefore, the Court finds that Plaintiff's first argument fails, and does not provide a basis for denying Defendant's motion.

With regard to the second element, Plaintiff argues that Defendant has failed to show that he is a driver's helper or a loader.[23] Because the Court finds that no genuine issue of material fact exists as to whether Plaintiff was a loader, it does not address the issue of whether Plaintiff could possibly be considered a driver's helper. A loader is defined as an employee "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country."[24] Stated another way, a loader is a person who, as the vehicle is being loaded, exercises "judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized."[25] Plaintiff contends that he was not a loader because he exercised no discretion in determinating what trash to load into the truck, as his decision of whether to load a particular piece of trash was based solely on Defendant's guidelines. Plaintiff's argument is not persuasive. This is not a case where Plaintiff's driver or some other supervisor was walking next to him telling him that this piece of trash is acceptable, but this one is not; rather, Plaintiff was having to determine if the trash he encountered at each stop met Deffenbaugh's standards and could be safely loaded. Thus, while it

---

[23]Defendant does not argue that Plaintiff is a driver or mechanic for purposes of the Motor Carrier Act.

[24]29 C.F.R. § 782.5(a).

[25]*Id.*

is true that Plaintiff was not free to determine what categories of trash would or would not be collected, he was nevertheless exercising his judgment and discretion when loading the truck.[26] Furthermore, it is uncontroverted that Plaintiff's failure to properly apply the Deffenbaugh loading standards could result in damage to the truck or injury to himself and others.[27] Therefore, Plaintiff's second argument also does not provide a basis for denying Defendant's summary judgment motion.

Plaintiff's last contention is that Defendant cannot meet the third element because the trash he loaded was not property, as it was non-nuclear and non-recyclable. Title 49 does not define property. "In cases of Congressional silence such as this, the authorized agency . . . possesses broad discretion in administering the law. [The Court] will defer to the agency's interpretation of an ambiguous statute if it is reasonable in light of the text, the structure, and the underlying purpose."[28] The Interstate Commerce Commission ("ICC"), which was the agency initially tasked with the responsibility of enforcing Title 49, appears to have taken the position that non-nuclear, non-recyclable trash was not property.[29] Since Congress transferred the power to enforce Title 49 to the

---

[26]*See, e.g., Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1196-97 (4th Cir. 1969) (finding that the plaintiffs were loaders, despite the fact that they were supervised while loading the truck, because they were not specifically instructed where every piece of freight should be placed). The fact that Plaintiff did not have someone specifically telling him which piece of trash was acceptable and which one was not distinguishes this case from those cited by Plaintiff. *See Williams v. R.W. Cannon, Inc.*, 2008 WL 4097613, at *10 (S.D. Fla. Sept. 4, 2008) (stating that the plaintiff merely put the load where his supervisor told him); *Pravia v. Blasa Group, Inc.*, 2008 WL 821611, at *3-4 (S.D. Fla. Mar. 27, 2008) (same).

[27]*See* Doc. 56-1, at 17 (loading pool chemicals into the truck's hopper could result in a fire).

[28]*Midwest Crane & Rigging, Inc.*, 603 F.3d at 840 (internal citations and quotation marks omitted).

[29]*See Transp. of "Waste" Prods. for Reuse and Recycling*, 114 M.C.C. 92, 104 (1971) ("The transportation of trash and garbage, which has no property value, solely for the purpose of disposal is not subject to economic regulation by this Commission."); *Joray Trucking Corp. Common Carrier Application*, 99 M.C.C. 109 (1965) (concluding that debris and rubble is not property under Title 49). *But see Nuclear Diagnostic Labs., Inc., Contract Carrier Application*, 131 M.C.C. 578, 580 (1979) (" 'Property' connotes ownership as well as value. Something that is owned can be property notwithstanding its lack of economic value.").

DOT,[30] the DOT has not issued any regulations or formal guidance on the issue of whether trash is property. As a result, the Court must look to see if the DOT has demonstrated through its actions that trash is property for purposes of Title 49.[31] Here, it is uncontroverted that all of Defendant's residential trash trucks are registered with the DOT, that Defendant's residential trash truck drivers comply with the DOT's pre- and post-trip inspection requirements and hours-of-service limitations, and that Defendant is subject to audits and inspections by the FMCSA. The Court finds that the combination of these facts show that the DOT is exercising jurisdiction over Defendant's residential trash hauling business.[32] Because the DOT is exercising such jurisdiction, it must necessarily have adopted the position that trash is property, otherwise it would have no basis for regulating Defendant's residential trash hauling business.[33] Therefore, in light of this exercise of authority, the Court concludes that the DOT treats trash as being property.[34]

Due to the above conclusion, the Court must now move on to the second question: whether the DOT's position with regard to trash is consistent with the text, structure, and underlying

---

[30]*See* Department of Transportation Act, Pub.L. No. 89-670, 80 Stat. 931 (1966) (transferring certain powers to the DOT); Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104-88, 109 Stat. 803 (1995) (abolishing the Commission).

[31]*See Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*, 476 U.S. 426, 438-39 (looking to the agency's actions to determine what the agency's interpretation of an ambiguous statutory term was when the agency had not issued a formal interpretation of the statute).

[32]*See, e.g., Baez*, 938 F.2d at 182 (finding that the ICC had exercised jurisdiction over the defendant because it had issued them a permit). The fact that there is evidence that the DOT has exercised jurisdiction over Defendants distinguishes this case from the ones cited by Plaintiff in his briefing: *Alice v. GCS, Inc.*, 2006 WL 2644958 (N.D. Ill. Sept. 14, 2006), *Wilson v. IESI N.Y. Corp.*, 444 F. Supp. 2d 298 (M.D. Pa. 2006); *I.C.C. v. Brown-Ferris Indus., Inc.*, 529 F. Supp. 287 (N.D. Ala. 1981).

[33]*See* 49 U.S.C. § 13501 ("The Secretary and the Board have jurisdiction . . . over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier . . . .").

[34]This conclusion is consistent with the litigation position adopted by the Secretary of Labor, the agency charged with enforcing the FLSA, in *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895 (E.D. Pa. 1989). There, the Secretary conceded that the Motor Carrier Act exemption applied to the defendant, a company that hauls trash. *Id.* at 928.

purposes of Title 49. Beginning with the text first, the Court finds that there is no language in Title 49 that indicates that Congress intended for the regulating agency to give property a narrow meaning. In fact, as pointed out by the ICC, the language suggests quite the opposite.[35] The Court also finds that the structure of Title 49 supports the position that trash is property. Section 13506 of Title 49 sets forth a list of items that are exempt from the Secretary of Transportation's authority – e.g., wood chips, broken, crushed, or powered glass, natural, crushed, vesicular rock, and newspapers – but does not include trash, which, under the legal maxim of *expressio unius est exclusio alterius*, implies that Congress intended for the DOT to have jurisdiction over the interstate transportation of trash. Lastly, one of the main purposes for regulating transportation that takes place on this Country's public roads and highways is safety.[36] As noted by other courts, this purpose is implicated whenever a truck carries any item, regardless of " 'whether [it] is . . . twenty tons of garbage or twenty tons of caviar.' "[37] Therefore, for the above reasons, the Court finds that interpreting property to include trash is consistent with the text, structure, and purpose of Title 49. Thus, the Court will interpret the term property to include trash.

Viewing the evidence as a whole, the Court finds that there is no genuine issue of material fact as to whether Plaintiff's employment was subject to the Motor Carrier Act exemption. The uncontroverted evidence shows that the DOT has jurisdiction over Defendant, that Plaintiff acted

---

[35]*See Long Island Nuclear Serv. Corp. Common Carrier Application*, 110 M.C.C. 398, 404 (1969) ("The term 'property' is not defined in the act and is used therein in its broadest context.").

[36]*See Tooley v. Hill Truck Line, Inc.*, 1992 WL 266605, at *4 (D. Kan. Sept. 30, 1992) ("The purposes of the Motor Carrier Safety Act was [sic] to promote the safe operation of commercial motor vehicles, to minimize danger to the health of operators of commercial motor vehicles and on other employees whose employment directly affects motor carrier safety, and to assure increased compliance with traffic law and with the commercial motor vehicle safety and health rules, regulations, standards, and orders issued pursuant to this Act." (internal quotation marks omitted)).

[37]*R.R. Comm'n v. Waste Mgmt. of Tex., Inc.*, 880 S.W.2d. 835, 840 (Tex. App. 1994) (quoting *N. Hills Sanitation, Inc. v. Cossart*, 264 N.W.2d 711, 713 (S.D. 1978)).

as a loader during his employment with Defendant, and that the trucks that Plaintiff worked on carried property. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's FLSA overtime claim.

**KMWMHL Overtime Claim**

Pursuant to the KMWMHL, all employers must pay their employees overtime wages for hours worked in excess of 46 hours per week.[38] The KMWMHL explicitly excludes from its definition of employer, though, "any employer who is subject to the provisions of the [FLSA]."[39] Here, it is uncontroverted that Defendant is a FLSA regulated employer.[40] Relying principally upon the Kansas Supreme Court case *Dollison v. Osborne County*[41], Plaintiff nevertheless argues that his state law claim should survive because the Court has found that Defendant is exempt from the FLSA's overtime provision.

Recently, in *Brown v. Ford Storage & Moving Co., Inc.*[42], the Kansas Appellate Court had an opportunity to address the very argument now made by Plaintiff. There, the plaintiff, a truck driver, asserted a KMWMHL overtime claim against his former employers, businesses engaged in interstate commerce. In their defense, the defendants argued that they were exempt from the KMWMHL because they were subject to the FLSA.[43] The plaintiff responded by arguing, among

---

[38]*See* K.S.A. 44-1204(a).

[39]K.S.A. 44-1202(d).

[40]An employer is subject to the FLSA if it engages in interstate commerce and has annual gross sales in excess of $500,000. *See* 29 U.S.C. § 203(s)(1).

[41]241 Kan. 374, 737 P.2d 43 (1987).

[42]43 Kan. App. 2d 304, 224 P.3d 593 (2010).

[43]*Id.* at 306, 224 P.3d at 595.

other things, that because the defendants were exempt from the FLSA's overtime provisions, as they qualified for the Motor Carrier Act exemption, they should not also be exempt from the KMWMHL's overtime provisions. Citing to the plain language of K.S.A. 44-1202(d), the appellate court rejected the plaintiff's argument. The court stated that because the defendants were subject to the FLSA (for example, the defendants still could not pay a driver lower wages based on gender nor could they employ underage drivers), the KMWMHL did not apply to them, irrespective of the fact that the defendant was exempt from the FLSA's overtime provision.[44]

In his summary judgment briefing, Plaintiff contends that the Court should disregard the holding in *Brown* because it is in direct conflict with the Kansas Supreme Court's decision in *Dollison v. Osborne County*[45]. The Court disagrees. As noted by Kansas Court of Appeals in *Brown*, *Dollison* must be read in context. There, the plaintiff, a former undersheriff, was asserting a KMWMHL overtime claim. Despite the fact that at the time of the litigation the FLSA was not applicable to the defendant because it was a unit of local government, the defendant argued that the plaintiff's claim should be dismissed because the FLSA exempts all law enforcement organizations with fewer than five employees from having to pay overtime.[46] The Supreme Court rejected this argument, holding that the KMWMHL and FLSA are not coextensive, and, thus, the fact that an employer is exempt from a certain FLSA provision does not necessarily mean that it is exempt from a similar provision under the KMWMHL. Rather, there must be an independent state law basis for

---

[44]*Id.* at 317-18, 224 P.3d at 601.

[45]241 Kan. 374, 737 P.2d 43.

[46]*Id.* at 380, 737 P.2d at 48. Section 213(b)(20) of Title 29 sets forth the law enforcement exemption.

-11-

excluding the employment relationship from the state's wage laws.[47]  In *Brown*, an independent basis for excluding the defendant from the state's wage laws existed, namely K.S.A. 44-1202(d), which exempts any employer who is subject to the FLSA from the KMWMHL.  Due to this distinction, the Court does not find the *Brown* holding inconsistent with *Dollison*, and, thus, will not disregard it.

Although *Brown* is not inconsistent with *Dollison*, it does appear to conflict with the Court's earlier holding in *Clements v. Emery Worldwide Airlines, Inc.*[48]  In that case, the Court concluded that the defendant, who was subject to the FLSA, was nevertheless an employer for purposes of the KMWMHL, and was thus subject to the statute's overtime provisions, because it was exempt from the FLSA's overtime provisions.[49]  The Court based its conclusion upon the following statement made by the Kansas Supreme Court in *Dollison*: "[e]ven if the requirements of the [law enforcement] exemption[] were met by the facts of this case, it would exclude plaintiff only from the protections of the FLSA; it would not exclude him from the KMWMHL."[50]  The Court believed that the quoted statement, which is dicta, clearly indicated that courts are to interpret the KMWMHL to include FLSA employers who are exempt from the FLSA's overtime provisions.  Since *Clements*, though, the Kansas Court of Appeals has stated that the language in *Dollison* cannot be literally applied in different factual contexts.[51]  This subsequent clarification, coupled with the fact that there was no attempt by the Kansas Supreme Court in *Dollison* to square its statement with the language

---

[47] 241 Kan. at 382-83, 737 P.2d at 49-50.

[48] 44. F. Supp. 2d 1141 (D. Kan. 1999).

[49] *Id.* at 1148.

[50] *Id.* (quoting *Dollison*, 241 Kan. at 381-82, 737 P.2d at 49).

[51] *See Brown*, 43 Kan. App. 2d at 312, 224 P.3d at 598.

found in K.S.A. 44-1202(d), which clearly exempts FLSA covered employers from the KMWMHL, leads the Court to the conclusion that its earlier holding in *Clements* does not accurately reflect the current state of law in Kansas. As a result, the Court finds that the *Clements* decision does not necessitate a finding that the KMWMHL should be applied to Defendant.

Plaintiff's last basis for arguing that the Court should find that Defendant is an employer for purposes of the KMWMHL is an opinion letter drafted by the Kansas Attorney General in 1986.[52] In this letter, the attorney general stated that law enforcement agencies that are covered by the FLSA, but are exempt from its overtime provisions because they employ less than five deputies, should nevertheless be considered employers for purposes of the KMWMHL. The Court has reviewed the attorney general's letter, and does not find it persuasive. Therefore, it concludes that the letter does not provide a justification for deviating from the plain language of K.S.A. 44-1202(d).

In conclusion, based on the plain language in K.S.A. 44-1202(d) and the recent *Brown* decision, the Court finds, as a matter of law, that Defendant is not an employer for purposes of the KMWMHL. Accordingly, Defendant is entitled to summary judgment on Plaintiff's KMWMHL overtime claim.[53]

---

[52]*See Labor & Indus. – Minimum Wage & Maximum Hours – Overtime & Comp.; Exceptions*, Kan. Atty. Gen. Op. No. 86-85 (1986).

[53]Because it finds that Plaintiff's claims fail because the Motor Carrier Act exemption applies and Defendant is not an employer for purposes of the KMWMHL, the Court denies as moot Plaintiff's request for additional discovery relating to the number of hours he worked.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Doc. 54) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's motion to certify a class under 216(b)of the FLSA (Doc. 48) is hereby DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated this 18th day of March, 2011.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE